UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                          :
JERYL ABRAMSON and YASGUR ROAD                            :
PRODUCTIONS, LLC,                                         :
                                                          :
                          Plaintiffs,                     :        14-cv-2371 (NSR)
        -against-                                         :
                                                          :        OPINION & ORDER
BETTE JEAN GETTEL, GREGG SEMENETZ,                        :
DANIEL STURM, and the TOWN OF BETHEL,                     :
                                                          :
                          Defendants.                     :
------------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

        Plaintiffs Jeryl Abramson and Yasgur Road Productions, LLC ("Yasgur Road," and

together with Abramson, "Plaintiffs") commenced this action by complaint filed April 4, 2014,

against defendants Bette Jean Gettel, Gregg Semenetz, Daniel Sturm, and the Town of Bethel

(the "Town," and together with individual defendants, "Defendants"). Plaintiffs bring the action

pursuant to 42 U.S.C. § 1983, alleging that Defendants deprived Plaintiffs of their right to equal

protection of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

More specifically, Plaintiffs (a purported "class of one") contend that Defendants enforced Town

land use laws in a manner that penalized Plaintiffs and harmed their financial interests, while

according more lenient treatment to a competing entertainment and concert-hosting business,

G&B Real Property LLC ("G&B"). Yasgur Road and G&B have hosted a series of reunion

concerts over the years commemorating the legendary Woodstock festival of 1969.

        Defendants now move to dismiss the complaint in its entirety pursuant to Federal Rule of

Civil Procedure 12(b)(5) and (6), for insufficient service of process and failure to state a claim

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/25/2014

upon which relief can be granted.  For the following reasons, the Court GRANTS the motion and dismisses this action in its entirety.

## I.  COMPLAINT & BACKGROUND

### A.  Historical Perspective

Plaintiff Jeryl Abramson is either the former spouse, or the former partner, of Roy Howard.  Abramson and Howard purchased a particular 100-acre plot of land in Sullivan County, New York from Max Yasgur in or about 1971.  This plot of land, a portion of the renowned "Yasgur Farm," brought with it a significant piece of rock-and-roll history:

> On short notice, in August 1969, Mr. Yasgur leased a 300-acre alfalfa field to the organizers of the Woodstock music festival. And that, in the shorthand of all the notions and emotions generated there on his trampled field, became Woodstock. The festival was named for the town 75 miles away where it was originally to be held, and from which it had to be rerouted at the last minute because of permit problems.

*A Beloved Woodstock Nation Site Goes on Sale, for $ 8 Million*, N.Y. Times, Aug. 12, 2007, http://www.nytimes.com/2007/08/12/nyregion/12woodstock.html.

Yasgur is known to have clashed with the nearby Town of Bethel in the days leading up to Woodstock and in the years following the concert as he liquidated his interest in the property. *See Max Yasgur Dies; Woodstock Festival Was on His Farm*, N.Y. Times, Feb. 10, 1973. Neighbors turned against him and sued for area property damage.  The Town took issue with his use of the land for entertainment purposes.  *See Woodstock Land for Sale, but Yasgur's Legacy Lives On*, N.Y. Times, Aug. 28, 1973.

The original plot that hosted Woodstock is now home to a museum.  Plaintiffs own and control 100 acres adjacent to the museum.  On that plot, Howard, Abramson, and Yasgur Road (f/k/a "YRP, LLC") have hosted a series of reunion concerts.  In 1989, forty-to-fifty thousand

2

people turned up to Yasgur Farm even without an organized event to attend.  In 1996, Plaintiffs

took the initiative and hosted an organized, three-day outdoor music festival.  The 1996 festival

launched Plaintiffs and the Town into a "long-running and sometimes bitter conflict . . . about

permits and no-camping rules."  *A Beloved Woodstock Nation Site Goes on Sale*, N.Y. Times,

Aug. 12, 2007.  This conflict has run from 1996 to the present.  Writing in 2012, the New York

Supreme Court, Appellate Division, noted that Abramson and Howard "for many years have had

a contentious and litigious relationship with [the] Town of Bethel regarding their use of their

parcels of property within the Town on which they allegedly frequently conducted entertainment

events, such as concerts, without first obtaining the necessary permits from the Town."  *Town of*

*Bethel v. Howard*, 944 N.Y.S.2d 390, 391 (N.Y. App. Div. 2012).

      **B.**    **Allegations**

      The instant case represents the latest chapter in this saga.  The complaint alleges that the

Town, Gettel (a Town code enforcement officer), Sementez (a Town building inspector), and

Sturm (the Town supervisor) violated Plaintiffs' constitutional right to equal protection under the

law, by enforcing land use restrictions more stringently for Yasgur Road than for a competing

company, G&B.  The complaint outlines the historical relationship between each company and

the Town, and where the complaint lacks detail, the public record provides it.[1]

      **1.**  **Yasgur Road**

      In 1997, after the three-day festival in 1996, the Town sought and obtained an injunction

(first temporary, then permanent) requiring that any "recreation amusement or recreation use" of

the land be properly permitted by the Town.  Complaint ("Compl.") (dkt. no. 1) ¶¶ 12-13.  In

effect, the injunction required that Plaintiffs obtain prior approval from the Town before hosting

---

[1] The Court declines to consider, and has not relied upon, any facts asserted in the parties' briefing or declarations
which are not within the four corners of the complaint or matters of public record.

another Woodstock reunion event.

Despite the injunction, from 1997 to 2003, Plaintiffs hosted an assortment of events on the land each August, always without obtaining prior approval.  *Howard v. Town of Bethel*, 481 F. Supp. 2d 295, 298 (S.D.N.Y. 2007).  The events were denominated as "political rallies," "garage sales," or "private parties."  *Id.*

In December 2003, Plaintiffs applied for a special use permit to hold an event on the land in August 2004.  *Id.*  The Town granted the application on the condition that camping and open fires be prohibited.  *Id.*  Plaintiffs reportedly hosted the event and permitted attendees to camp and light open fires.  *Id.*

The next year, 2005, Plaintiffs again sought a permit, and this time they applied for one that allowed camping.  *Id.*  The permit request was denied, but Plaintiffs hosted an event anyway. *Id.*

Following the unauthorized 2005 event, in 2006, the Town brought a legal proceeding to enforce the 1997 injunction and thereby enjoin and preclude an event scheduled for August 2006.  The legal proceeding that was initiated in 2006 culminated in a consent order which issued in 2007,[2] pursuant to which Howard, Abramson, and Yasgur Road agreed and were ordered to abide by the terms of the 1997 injunction.  Compl. ¶¶ 15-16.  The key restriction in the consent order was that Plaintiffs had to apply for and receive a special use permit before they could host a Woodstock-themed concert or gathering on their land.  *See* Declaration of Nicholas A. Pascale Ex. D.

A few years later, in May 2011, Plaintiffs advertised an event for five thousand people and twenty bands without first obtaining a special use permit.  In response, the Town fined

---

[2] No. 1591/97 (N.Y. Sup. Ct. Sullivan Cnty. May 7, 2007).

Plaintiffs $25,000, which was the stipulated penalty in the consent order.  Compl. ¶ 17.  The next year, 2012, Plaintiffs did not seek to host a concert, but in 2013 they did.  That year, they procured the special use permit first, but they did so at substantial cost.  *See id.* ¶¶ 27, 31.

It should be noted that although the complaint does not specify the zoning type for Plaintiffs' land, the public record establishes that it is zoned agricultural and has been since Max Yasgur owned it.  *See Howard*, 481 F. Supp. 2d at 299.

### 2.  G&B

G&B allegedly has received more favorable land use treatment from Town authorities than Plaintiffs have received over the years.  G&B operates within the "G-17B Gateway Commercial District," which is said to bar *any* "recreation amusement or recreation use," rather than merely restricting such activity.  Compl. ¶¶ 21-22.  Nevertheless, in May 2011, G&B hosted a concert involving outdoor amplified music and camping.  *Id.* ¶ 18.  The Town issued G&B "camping violations" (presumably, criminal misdemeanors or infractions), but did not otherwise prosecute G&B for the 2011 event.  *Id.*  Nor did the Town pursue civil enforcement avenues, such as seeking an injunction of the sort the Town sought against Plaintiffs in 1997 and enforced thereafter.  *See id.*

The next year, in August 2012, G&B hosted a Woodstock reunion event similar to what Plaintiffs had hosted.  The Town took no action against G&B for doing so.  *Id.* ¶ 20.  At some point before August 2013, G&B advertised another Woodstock reunion event.  Again, the Town took no action against G&B.  *Id.* ¶ 28.  Apparently, both Yasgur Road and G&B hosted Woodstock reunion events in 2013, and presumably Plaintiffs lost money because of the competition.

Plaintiffs contend that G&B's 2013 event was substantially similar to Plaintiffs' 2013

5

event—evidently G&B and Yasgur Road are competing for market share—and that Defendants nevertheless treated the two events and companies differently without any rational basis for doing so. *Id.* ¶¶ 33-35.  Plaintiffs further allege "[t]hat the constitutional deprivation by [the Town], was proximately caused by a policy, practice or custom of [the Town], which policy was to hurt the Plaintiffs in their wallets and to otherwise damage the Plaintiffs' reputation and in the operation of their business. *Id.* ¶ 37.

## II. MOTION TO DISMISS STANDARD

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Rule 12(b)(6) dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

6

## III. DISCUSSION

Colorful as the history of Woodstock and Plaintiffs' land may be, this action does not survive a motion to dismiss for a few very basic reasons. First, Plaintiffs have failed to rebut the assertion that defendant Semenetz was not served with process, and therefore the complaint is dismissed as against Semenetz. *See* Fed. R. Civ. P. 4.

Second, Plaintiffs' *Monell* allegation – that the Town had a policy, practice or custom to hurt Plaintiffs in their wallets, reputation, and operation of their business – is unduly conclusory and does not pass muster under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.). The action is dismissed as against the Town for this reason alone. *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978) (a local government may not be sued under Section 1983 unless execution of a governmental policy or custom inflicts the injury).

Third, as against all Defendants, the action fails to state an equal protection claim. The gravamen of the complaint is that the Town's civil enforcement of land use laws, dating back to 1997, has placed Plaintiffs at a competitive disadvantage vis à vis G&B for no rational reason. The principle source of that disadvantage is the 2007 consent order, which requires that Plaintiffs obtain a special use permit before hosting a concert, even though G&B hosted one in 2011, 2012 and 2013 without such a permit.

Plaintiffs have framed this case as an equal protection challenge, and yet the crux of the dispute is the operation of the consent order. That order is enforceable, as a threshold matter, and this Court will not end run state court authorities holding as much. *See Howard*, 944 N.Y.S.2d at 392 (affirming denial of motion seeking a declaration that three-day concert in May

7

2011 would not violate consent order); *see also Missere v. Gross*, 826 F. Supp. 2d 542, 558 (S.D.N.Y. 2011) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.").

This Court also will not, and cannot, rely solely on the alleged facts concerning the 2007 imposition of the consent order, in determining whether the action is well-pleaded. The complaint was filed April 4, 2014, and insofar as it is based on events pre-dating April 4, 2011, the complaint is time-barred by the applicable three-year statute of limitations. *See Fahs Const. Group, Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (three-year statute under Section 1983 runs from date plaintiff knew or should have known of the disparate treatment).

That leaves as potentially viable only a narrow set of allegations. Plaintiffs allege that the Town treated Yasgur Road and G&B differently in 2011, 2012 and 2013, without any rational basis for doing so. One alleged example of this is the Town seeking a $25,000 fine against Yasgur Road in 2011, as compared to the Town issuing G&B "camping violations." Compl. ¶¶ 17, 21-22. Another example is the consent order's operation in 2013, requiring that Plaintiffs obtain a costly special use permit, as compared to the Town's inaction against G&B. *Id.* ¶¶ 27-28, 31. The Court finds that these allegations are insufficient to state a cognizable equal protection claim.

### A.  A "Class of One" Equal Protection Claim

Although "the Equal Protection Clause is most commonly used to bring claims alleging discrimination based on membership in a protected class," a plaintiff who does not allege membership in a protected class may, nonetheless, bring a "class of one" equal protection claim. *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v.*

*Spiridon*, 531 F.3d 138 (2d Cir. 2008).  "A class-of-one claim exists 'where the plaintiff alleges

that [he] has been intentionally treated differently from others similarly situated and that there is

no rational basis for the difference in treatment.'"  *Analytical Diagnostic Labs, Inc. v. Kusel*, 626

F.3d 135, 140 (2d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

To state a claim, a plaintiff must identify at least one individual with whom he can be compared.

*King v. N.Y. State Div. of Parole*, 260 Fed. App'x 375, 380 (2d Cir. 2008).

There must be "an extremely high degree of similarity" between the proposed comparator

and the plaintiff such that an inference can be drawn that the plaintiff was "intentionally singled

out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an

improper purpose – whether personal or otherwise – is all but certain."  *Clubside, Inc. v.*

*Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

> Accordingly, to succeed on a class-of-one claim, a plaintiff must
> establish that "(i) no rational person could regard the
> circumstances of the plaintiff to differ from those of a comparator
> to a degree that would justify the differential treatment on the basis
> of a legitimate government policy; and (ii) the similarity in
> circumstances and difference in treatment are sufficient to exclude
> the possibility that the defendants acted on the basis of mistake."

*Id.* (quoting *Neilson*, 409 F.3d at 105).  Thus, to state a claim that will pass muster under Rule

12(b)(6), Plaintiffs must plausibly allege that a property "sufficiently similar to theirs [was]

treated more favorably" by the Town.  *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55,

60 (2d Cir. 2010) (affirming dismissal).

### B.  Analysis

Plaintiffs have not adequately pled that their property is sufficiently similar to G&B's.

One reason they have not done so (and cannot do so) is the consent order.  As noted, the New

York Appellate Division upheld that order in the face of a direct challenge, *Howard*, 944

9

N.Y.S.2d at 392, and Plaintiffs concede that the order remains in effect at this time.  The order is the practical equivalent of a static land use law.  It has the force of law, it memorialized the terms of preexisting injunctions based on agricultural zoning, and it continues to dictate the approvals Plaintiffs must seek before hosting a concert on the land.  Because the order represents the status quo for Yasgur Road, it is the appropriate point of comparison to the Bethel Town Code provisions which Plaintiffs contend bar any "recreation amusement or recreation use" on G&B's land.  Comparing the two, even accepting all well-pleaded allegations as true, the consent order leaves the two companies very differently aligned.  Put simply, one company must obtain a special use permit before hosting a concert, while the other company need not do so.  *Cf. Zito v. Town of Wawayanda*, No. 13-cv-3573 (VB), Memorandum Decision (dkt. no. 18), at *9 (S.D.N.Y. Dec. 27, 2013) (finding properties not similarly situated in part because one was subject to restrictive covenants with municipality, while other was not), *aff'd* 571 Fed. App'x 70, 72 (2d Cir. 2014) (summary order).  Although G&B's property is zoned commercial – which may bar all recreational use in the first instance – the company could seek a variance or pursue another such avenue to host an event lawfully.  *See* Bethel Town Code § 345-50(E)(1)-(2). Either way, G&B need not seek prior approval by way of a permit.  In contrast, Yasgur Road must abide by the consent order and seek a special use permit; that much is clear.  Following the Court's reasoning in *Zito*, the consent order drives a wedge between Plaintiffs' property and the "comparator" property, when it comes to assessing similarity.  *See id.*  The Court finds that the consent order, standing alone, makes the Yasgur Road and G&B properties insufficiently similar, as a matter of law, to support a "class of one" equal protection claim.

Moreover, the presence of the consent order is not the only fact making the two properties dissimilar.  The complaint and public record, read together, establish that Plaintiffs'

property is unique, a class apart historically and legally. Plaintiffs' land is associated with Max Yasgur and decades of Woodstock lore. Disputes concerning activities on the land date back to 1969. From that year onward, the property has had a contentious and litigious history. Things came to a head in 1996 when Plaintiffs held a three-day music festival without first obtaining a special use permit. *Howard*, 481 F. Supp. 2d at 299. Plaintiffs were required to get a permit even then, before any consent order, according to Town ordinances which classified the land as an agricultural district. *Id.* They did not do so, and after the festival, lawsuit followed lawsuit. *See id.* By now, it is well-documented that Plaintiffs have sought to circumvent applicable permit requirements time and again. *See id.* One example is the 1996 concert. Another is the unauthorized camping in 2004. Another is the unauthorized event held in 2005. Another is the unauthorized event advertised in 2011.

Although the complaint elides or ignores much of this history, it does not erase it. Rather, years of non-compliance with Town land use requirements place Plaintiffs and their property in a unique circumstance vis à vis the Town. The long-running and bitter dispute that has transpired largely explains why Yasgur Road was fined $25,000 in 2011, and why the company otherwise has triggered Town civil enforcement efforts, including continued enforcement of the permit requirement in 2013.

In contrast, the complaint is devoid of factual allegations placing G&B in a historically or legally similar position to Yasgur Road. Instead, silent as to the history of the G&B property, the complaint notes that the property—a much smaller parcel than Plaintiffs'—is within a commercial district, not an agricultural district. Again, commercial zoning laws may be stricter on recreational use in the first instance, but that does not foreclose G&B from seeking a variance or other lawful permission to host a concert. Thus, the stringency of commercial zoning laws

11

does not necessarily put the G&B and Yasgur Road properties on equal footing.  Moreover, G&B's relationship with the Town may permit some leniency in the application of whatever laws do apply, whereas Yasgur Road's relationship with the Town likely, and rationally, does not permit any such leniency.  In short, dramatic historical differences, different zoning classifications, and different land use rights make these two properties dissimilar as a matter of law.  That dissimilarity, in turn, tends rationally to justify "differential treatment" of the two companies based on apparently "legitimate government policies." *Valentin*, 468 F.3d at 159; *see also Rustin*, 610 F.3d at 60 (citing *Campbell v. Rainbow City*, 434 F.3d 1306, 1214-15 (11th Cir. 2006) (properties that differ in land use are not prima facie similarly situated)).  Accordingly, the Court finds that the complaint fails to state a viable "class of one" equal protection claim.

## V. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the complaint is GRANTED, and the case is dismissed in its entirety.  The Clerk of Court is respectfully requested to terminate the action.

Dated: November 25, 2014
      White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge